### JOHN CARTER v. THE STATE.

#### No. 5814. Decided May 5, 1920.

**1.—Assault to Rape—Insufficiency of the Evidence.**

Where, upon trial of assault with intent to rape, the evidence was insufficient to support a conviction for that offense, the judgment must be reversed and the cause remanded. Following Thompson v. State, 83 Texas Crim. Rep., 18, and other cases.

**2.—Same—Case Stated—Aggravated Assault.**

Where, upon trial of assault with intent to rape, the evidence showed the indecent fondling by defendant of a little girl, but fell short of showing an intent to commit rape, the conviction could not be sustained, and the evidence would only sustain the offense of aggravated assault.

**3.—Same—Argument of Counsel—Inflamitory Argument.**

Counsel for the State are again admonished to exercise self-restraint and to avoid the use of utterances calculated to inflame the minds of the jury. Following Hemphill v. State, 72 Texas Crim. Rep., 638, and other cases.

**4.—Same—Competent Witness—Child Witness—Discretion of Court.**

Where, the State's witnesses were two little girls, ages respectively six and seven years, who were held to be competent by the trial judge to testify, and there was nothing to show an abuse of discretion in this respect, there was no reversible error. Following Munger v. State, 57 Texas Crim. Rep., 388, and other cases.

Appeal from the District Court of Anderson. Tried below before the Honorable John S. Prince.

Appeal from a conviction of assault with intent to rape. Penalty: five years imprisonment in the penitentiary, with recommendation of suspended sentence.

The opinion states the case.

*Seagler & Pickett*, for appellant.—On question of child witness: Holst v. State, 3 S. W. Rep., 757; Murphy v. State, 35 id., 174.

On question of insufficiency of the evidence: Cromeans v. State, 129 S. W. Rep., 1129, and cases stated in opinion.

*Alvin M. Owsley*, Assistant Attorney General for the State.—On question of child witness: Moore v. State, 49 Texas Crim. Rep., 449; Munger v. State, 57 id., 384, and cases cited in opinion.

On question of argument of counsel: Cockrell v. State, 211 S. W. Rep., 939.

MORROW, Judge.—The conviction is for assault with intent to rape, and punishment fixed at confinement in the penitentiary for five years.

May Ella Starkey, the prosecuting witness, testified that on the morning of the alleged offense, which occurred just before noon, she and her little cousin, Lou Etta Starkey, went from their home to the mail box some distance away to get the mail. They reached the box before the mail carrier had arrived, and while waiting for him the appellant drove up in his wagon. Appellant stopped, according to witness, got out of his wagon, and suggested that they play hide-and-go-seek, to which the little girls agreed. Lou Etta Starkey, the cousin, was selected "counter"—that is, she was to count while the others hid, and then try to find them—and appellant and May Ella went to hide. Witness said that she first hid behind a bush; that appellant requested her to come hide behind an old crib, but she refused and hid in the stable nearby; that appellant got in the stable with her, and while there "he pulled up my dress and run his hands all over my clothes." She further said: "He put his hand up the leg of my drawers," and "his hand touched my skin;" that he didn't put his hands on her after that, and made no attempt to hold her, but that when she was leaving he said to come back, "that was the way Ruth Gibson did," but she didn't know who Ruth Gibson was. In another place, witness testified that appellant did not put his hands on her. Lou Etta Starkey then came up looking for them, and appellant made both of them get in his wagon and drive with him towards his house; that just before reaching his house they saw the mail carrier coming, and jumped out of the wagon and ran to get the mail. After getting the mail, the two little girls went home, witness telling her cousin on the way home what had happened at the stable, and later told her mother.

Lou Etta Starkey, the cousin of prosecuting witness, testified to somewhat similar facts as May Ella; that they went to the mail box and appellant came up while they were waiting for the mail and suggested a game of hide-and-go-seek; that she counted while appellant and May Ella hid, and when they had hid she went to look for them. Just before she reached the stable where appellant and May Ella had been hiding, they came out of it, and appellant made her and her cousin get in his wagon and drive towards his home with him; that they saw the mail carrier coming before they arrived at appellant's home, and jumped out of the wagon and ran back to get the mail. They went from the mail box home, and saw no more of appellant.

Appellant, nineteen years of age and married, gave testimony to the effect that he stayed at his father's house the night before the alleged offense, and drove over to his home, to which he had recently

moved, the next morning. He passed the little girls at the Starkey mail box just before noon, and said that his mules shied at something in the road just as he was passing, but that he did not get out of the wagon, and did not say anything to the girls except "howdy-do." According to his testimony, he drove on to his home some four hundred yards up the road, after passing the mail box. Appellant also testified to an altercation with the father of the prosecuting witness, had the same evening, in which the girl's father accused him of wrongful conduct towards his daughter, and knocked appellant down.

J. A. Bean, the mail carrier, testifying for the appellant, said that he passed the Starkey mail box on the day of the occurrence, and saw the girls there; that approaching the mail box, and some two hundred yards from it by the road, he traveled down hill and had an unobstructed view from the box to appellant's house, and that at no time while he was traversing the two hundred yards to the mail box did he see the girls coming along the road from the direction of appellant's home. When he arrived nearer, the witness said, he saw the two little girls under a tree across the road from the mail box, about four feet from it. He gave them their mail, but noticed nothing unusual in their appearance—they were not excited and said nothing about appellant. Witness did not notice whether the girls were hot and perspiring as if from running.

The decisions of this court display a contrariety of opinion touching the offense of assault with intent to rape a child under the age of consent. See Hardin v. State, 39 Texas Crim. Rep., 426; Groomes v. State, 40 Texas Crim. Rep., 672; McAvoy v. State, 41 Texas Crim. Rep., 56. The rule accepted by all members of the court is stated in Cromeans v. State, 59 Texas Crim. Rep., 622, as follows: "If one take hold of a child under fifteen years of age, and handle her in such manner as, under the circumstances in the particular case, demonstrate a present intent to at once so subject the child to his power, she consenting or not, as that he may now accomplish the act of intercourse, he would be guilty of the offense."

The acts of the accused in the case mentioned were held not to bring him within this rule. The Cromeans case was followed in Blair v. State, 60 Texas Crim. Rep., 364, and Thompson v. State, 83 Texas Crim. Rep., 18, 200 S. W. Rep., 168, in both of which cases the evidence was held insufficient. Such, we think, must be the ruling in the instant case. Giving full credit to the theory of the State, as disclosed by the prosecutrix and her companion, and eliminating controverting evidence coming from the appellant and his witnesses, it is our opinion that the evidence would fail to sustain any offense greater than aggravated assault.

The argument of the attorney for the prosecution, stating to the members of the jury: "If this had been your baby, they would not be trying John Carter, they would be trying you for taking your shotgun and killing him, and the jury would be writing a verdict of

'Not guilty' in large letters," we think, was not within the scope of legitimate debate. The character of the case is one in which passion often enters into the verdict, and one calling for the exercise of self-restraint upon the part of the prosecuting officer in avoiding the use of utterances calculated to inflame the minds of the jury. Hemphill v. State, 72 Texas Crim. Rep., 638, 165 S. W. Rep., 465; Gasley v. State, 17 Texas Crim. App., 267; Smith v. State, 44 Texas Crim. Rep., 137; Thompson v. State, 33 Texas Crim. Rep., 472.

The complaint made by the appellant of the ruling of the trial court holding the two little girls, ages six and seven, who testified against him, competent witnesses, is not well taken. Their competency was a question for the trial judge, and his ruling is not to be overturned in the absence of abuse of discretion. Johnson v. State, 1 Texas Crim. App., 610, and other cases listed in Branch's Annotated Texas Penal Code, sec. 1771. The intelligence displayed and the knowledge of the sanctity of an oath and the consequences of perjury displayed by the witnesses in the instant case was quite equal to that manifested in numerous decisions of this court, notably Munger v. State, 57 Texas Crim. Rep., 388; Finch v. State, 71 Texas Crim. Rep., 327, and cases referred to in Vernon's Texas Crim. Statutes, vol. 2, p. 699, note 11. We deem it unnecessary to repeat the evidence going to show the qualification of the witness. Suffice it to say that the court's holding that it was sufficient is sustained.

For the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*