NICHOLAS v. STATE.   (No. 9240.)

(Court of Criminal Appeals of Texas.   March 25, 1925.)

1. Criminal law ⬷1153(2)—Ruling on competency of child as witness not disturbed, except for abuse.

Competency of child as witness, under Code Cr. Proc. 1911, art. 788, is primarily for trial judge, and his ruling will not ordinarily be overturned, except for abuse of discretion.

2. Witnesses ⬷40(1)—Tests of competency of child witness stated.

Factors determining competency of child witness are intelligence, not age, ability to give clear, concise recital of events, and knowledge that falsehood will entail punishment.

3. Witnesses ⬷45(2)—Child not rendered incompetent by instruction on nature of oath.

That child has been instructed touching nature of oath does not render it an incompetent witness.

4. Witnesses ⬷40(2)—Reception of testimony of seven year old prosecutrix for rape held within court's discretion.

Reception of testimony of seven year old prosecutrix for rape held within trial court's discretion.

5. Rape ⬷52(1)—Evidence held to warrant conviction of rape on girl of seven.

Evidence held to warrant conviction of rape on seven year old girl.

6. Criminal law ⬷396(2)—Evidence held admissible as being remainder of transaction and conversation introduced by defendant.

In view of Code Cr. Proc. 1911, art. 811, where defendant, charged with statutory rape, testified that, when arrested, he was allowed time in which to change clothing, and he requested officer to observe that he was suffering from venereal disease, rendering the crime impossible, officer's testimony as to conversation held properly received.

7. Criminal law ⬷404(4)—Blood-stained underwear of accused, charged with rape, held not inflammatory.

Reception in evidence, in prosecution for statutory rape, of accused's blood-stained underwear, held to transgress no rules of evidence as against objection that it was inflammatory.

8. Rape ⬷45—Blood spots on underclothing of accused held material.

Blood spots on underclothing of accused, charged with statutory rape, held material, where there was other evidence that prosecutrix was bleeding, and spots furnished evidence corroborative of state's and opposed to accused's theory.

9. Criminal law ⬷339—Evidence identifying defendant's underwear admissible.

On trial for rape, testimony of witness with whom defendant roomed, identifying his underwear, was not inadmissible because defendant denied ownership of that identified or because witness did not take possession thereof until 24 hours after the assault.

10. Criminal law ⬷814(17)—Refusal to charge on circumstantial evidence held not objectionable.

Refusal to charge on circumstantial evidence, in prosecution for statutory rape, held not objectionable; testimony of prosecutrix being direct, and corroborated by doctor and others.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Isaac Nicholas was convicted of statutory rape, and he appeals. Affirmed.

Jas. E. Rose, of Port Arthur, and C. E. Pool, of Beaumont, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

MORROW, P. J.   The offense is rape; punishment fixed at confinement in the penitentiary for a period of 99 years.

The subject of the rape is a child 7 years of age. From her testimony the making of the assault by the appellant was established. There is much corroborative evidence coming from the doctor, who examined the child, and from the mother, who examined her and some of her wearing apparel. Appellant testified, and denied the offense. He said that he had contracted a venereal dis-

ease, which rendered him incapable of committing the offense.

[1] Objection to the testimony of the child was made upon the ground that her youth and lack of knowledge disqualified her.

"Children * * * who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath," are incompetent to testify. Article 788, C. C. P.

The competency of a witness is primarily a matter to be determined by the judge presiding at the trial of the case, and his ruling will not ordinarily be overturned, unless it appears that in accepting the evidence judicial discretion was abused. Hawkins v. State, 27 Tex. App. 273, 11 S. W. 409; Charles v. State, 81 Tex. Cr. R. 457, 196 S. W. 179; Anderson v. State, 88 Tex. Cr. R. 307, 226 S. W. 414.

[2, 3] In testing the competency of a child witness, the law permits the use of simple words, and does not demand that a child possess or comprehend a vocabulary such as would be expected of an adult. The test applied is, not the age, but the intelligence, of the child. See Underhill on Crim. Ev. (3d Ed.) § 331. The ability to give a clear and concise recital of the events, and knowledge of the fact that falsehood will entail punishment, are cogent factors supporting the theory of competency. Valdez v. State, 71 Tex. Cr. R. 487, 160 S. W. 341; Anderson v. State, 88 Tex. Cr. R. 307, 226 S. W. 414; Underhill on Crim. Ev. (3d Ed.) § 331; Carter v. State, 87 Tex. Cr. R. 299, 221 S. W. 603. The fact that a child has been instructed touching the nature of an oath does not render it an incompetent witness. 1 Wharton's Crim. Ev. p. 745; 16 Amer. & Eng. Ency. of Law (2d Ed.) p. 227; Anderson v. State, 88 Tex. Cr. R. 307, 226 S. W. 414.

[4, 5] Under an examination by the appellant's counsel preliminary to giving the testimony, the witness said she knew what the court was talking about when he told her to hold up her hand and swear; that he told her to swear to God that she would tell the truth. She said she did not know how many years she had gone to school. She also said she had been going to Sunday school every Sunday. She testified that Mr. Humphreys had told her to tell the truth; that he also told her what it meant to be sworn. He told her that she would go to the penitentiary if she did not tell the truth, but did not tell her what to say when she got on the witness stand. From the testimony of the witness on direct examination, we take the following quotations:

"After my mama left, somebody else come to the house; it was Mr. Nicholas. * * * Before Isaac come there, there was nobody in the house, but me and my little baby sister. I don't know how old my little sister is. She can't talk. She is a little baby. When Isaac come there, he took my little baby sister and put her on the bed, and took me off of the bench and took me in the middle room. * * * After he put my little sister on the bed in the front room, he took me in the middle room. When he got me in there, he shut the door. After he shut the door, he throwed me down on the floor. After he throwed me down on' the floor, he tore my underclothes and got on me. * * * At that time my dress was over my head. He raised up my dress. * * * After he got me down on the floor, he unbuttoned his pants and got on me. * * * After he unfastened his pants, he got on top of me. I mean he laid down on top of me. I know that he took something out of his pants. He took something out of the front of his pants. After he took that thing out of the front of his pants, he got on me and put it in me. When he put it in me it hurt. I tried to cry and holler when he did that. I hollered. Yes, sir; I hollered. Nobody heard me when I hollered, because he put his hands over my mouth. I was laying down on the floor then. I could feel that thing that he took out of his pants in me. He kept me down on the floor a while—a good while. * * * The doors to the room was shut then. * * * When he got through doing that to me, he got up and fastened his trousers up again. He told me not to tell my mama what he had done to me, for if I did my mama would beat us both. * * * I was bleeding from between my legs after he got through doing that to me. * * * Isaac hurried me on back to school when he got through doing that. My mama did not come to the house before I left. I come home from school that evening about 4 o'clock. I bled some more that afternoon."

In the reports of this court are found many examples in which a child no older than the witness in the present case is shown to have sufficient knowledge and intelligence to render it a competent witness. See Mason v. State, 2 Tex. App. 192; Munger v. State, 57 Tex. Cr. R. 384, 122 S. W. 874; Carter v. State, 87 Tex. Cr. R. 299, 221 S. W. 603; Branch, Ann. Tex. P. C. § 1771. A full recital of the evidence of the child has not been attempted; nor is it deemed necessary. No doubt is entertained that in receiving the evidence the learned trial judge acted well within the discretion vested in him by law.

After the prosecutrix gave the testimony which has been quoted, her mother was called by the state and testified that the appellant, at the time of the assault, occupied a room in the house of the witness; that the date of the assault was on Thursday, and the condition of the child was discovered by the witness on Friday morning following. The witness told the child that it was time to get up and go to school. When approached, the prosecutrix was complaining and groaning. The witness then in-

sisted upon knowing what was the matter, and, receiving no answer, she examined the child and observed a quantity of blood upon her gown. Upon insisting on knowing the cause, the child said: "Mama, don't whip me." A doctor was called. Upon examining the child, he found that her vagina was lacerated and bruised. It appeared to have been rubbed. At the time of the examination, there was a slight hemorrhage. The doctor expressed the opinion as to the cause of the laceration and blood, that it could have been brought about by contact with the male organ in entering the vagina. The age and development of the child would not have permitted a complete entry of the male organ of a man. The hymen was not completely ruptured, but slightly so.

After receiving the testimony of the child, her mother, and the doctor, the state rested its case. Appellant was then called as a witness and testified in his own behalf. He denied in toto the assault upon the child, and declared that he was suffering from a venereal disease, which made it practically impossible for him to have committed the assault. He stated that, while changing his clothes, he exhibited his privates to the witness Abney, who made the arrest; that he had the conversation with Abney which is hereinafter detailed. According to the appellant, he had been living in adultery with Rosie Jackson, mother of the prosecutrix, but had ceased his relations for about a month before the occurrence in question on account of his disabled condition.

Appellant called the witness Abney, who, on direct examination, testified that, after learning of the alleged assault, he went to the home of Rosie Jackson, mother of the prosecutrix; that the appellant was present, and the little girl, in the presence of the appellant, accused him of assaulting her. She was lying in bed. The witness asked her who did it. She was at first reluctant to tell, but finally said it was the appellant, who at the time was standing at the foot of the bed. Appellant then dropped to his knees and denied the assault, whereupon the witness arrested him. On cross-examination the witness testified that the appellant requested permission to change his clothes, and did change them, including his underwear, leaving them in a certain room in the house. After the appellant rested his case, the witness Abney was called by the state in rebuttal.

[6] In bill No. 2 appellant complains that the witness Abney, when recalled by the state, was permitted to say to the jury:

"Yes, sir; I stated that the defendant, a few minutes after I told him that he was arrested, said that he wanted to change his underclothing."

The witness said he observed nothing indicating that the appellant was afflicted with a venereal disease. The witness also identified the drawers produced at the trial as those which the appellant took off in his presence. The receipt of this evidence is attacked upon the ground that the appellant was under arrest; also that the introduction of the underclothing was inflammatory. The record does not specifically reveal that the drawers were introduced in evidence, though counsel for the appellant drew out from the witness Abney that there were blood stains upon them. Before the witness Abney was recalled, and before he gave the testimony to the receipt of which complaint is made, appellant, in his direct testimony, said that he was arrested by Mr. Abney, and at that time said to him, "Will you wait until I change my clothing?" Abney said, "Yes." Appellant further testified that he did change his clothing in the presence of Abney; that he exhibited his privates to Abney, requested him to examine them, and said:

"Mr. Abney, you see there; do you think a man could go with a woman in that shape, much less going with a little girl; do you think anybody could go to a woman in that shape?"

[7] As the matter appears in the record, we are of the opinion that no error is shown in receiving the evidence of Abney in rebuttal. His testimony related to the same transaction and the same conversation as was put in evidence by the appellant through his own testimony, and apparently would be admissible under article 811, C. C. P., in which it is declared that, when part of a transaction or conversation is brought in evidence by one party, the law sanctions the receipt of the remainder of the transaction or conversation upon the same subject by the opposing party. The appellant, having chosen to put in evidence his conversation with Abney after his arrest and his exhibition to Abney of his privates, thereby sanctioned the introduction of Abney's version of the conversation and transaction. In receiving the underwear in evidence, there was no transgression of the rules of evidence. Underhill's Crim. Ev. (3d Ed.) § 101.

[8] The spots upon the underwear were material, for the reason that there was evidence from other sources that the prosecutrix was bleeding, and the blood upon the underwear of the appellant was a circumstance corroborative of the state's theory, as developed by the testimony of the little girl, and as opposed to the theory of the appellant, in which he disclaimed making the assault.

[9] From what we have just said, it follows that in our opinion the testimony of Rosie Jackson as to the identity of the underwear of the appellant which was produced upon the trial was not improperly received. The fact that the appellant denied the ownership of the drawers was no obstacle to the

state making proof that they belonged to him. The fact that the witness took possession of the drawers some 24 hours after the ·assault bore, as we conceive it, upon the weight, and not upon the admissibility, of the ,testimony. Her evidence upon the subject was but corroborative of that of Abney, to which reference has been made, and was in rebuttal of the appellant's testimony.

[10] The complaint of the argument of state's counsel suggesting the death 'penalty is not tenable; nor is the complaint of the refusal of the charge upon circumstantial evidence. The child's testimony was direct, and the circumstances detailed by the doctor 'and others were corroborative of 'her testimony.

Our examination of the record, in the light of the carefully prepared brief of the appellant's counsel, leads us to the conclusion that the evidence is such as warranted the jury in their decision that the appellant was guilty of the offense charged, and that in the procedure nothing occurred which would authorize this court to order a reversal of the judgment.

It is therefore affirmed.