SANTOS JIMINEZ V. THE STATE.

No. 9709.     Delivered December 2, 1925.

Rehearing Denied February 24, 1926.

### 1.—Murder—Child as Witness—Four Years Old—Held, Incompetent.

Where, on a trial for murder of his wife, a little child four years old, the daughter of appellant, was permitted to testify and give damaging testimony against him, and it being clearly shown that this little child had no conception of what an oath is, did not know what it was to be sworn in court, had no idea of what perjury is, nor the penalty therefor, we must hold that this witness was not competent, and it was error to permit her to testify. Following Williams v. State, 12 Tex. Crim. App. 137, and numerous other cases cited.

### 2.—Same—Child as Witness—Competency of—Rule Stated.

The rule is well settled in this state, that the competency of a child as a witness is to be determined by an examination before the court, and the action of the trial court thereon will not be reviewed on appeal in the absence of a showing that this discretion has been abused. It is also well settled, however, that children who after being examined by the court, appear not to possess sufficient intelligence to relate transactions with respect to which they are being interrogated, or who do not understand the obligations of an oath, are incompetent witnesses. See Sec· 1771, Branch's P. C. and authorities cited supra.

### 3.—Same—Charge of Court—On Manslaughter—Erroneously Refused.

Where, on a charge of murder of his wife, appellant's defensive theory being that at the time of the homicide, he had discovered his wife in bed with and in the act of adultery with one Juan Aranda, and then and there killed them both, it was reversal error for the court to fail to charge on manslaughter, and to refuse requested special charge presenting this issue.

**4.—Same—Child as Witness—Competency of.**

On rehearing the state, through able counsel, insists that we were in error in holding the little daughter of appellant not a competent witness. In a case where a child so young as the present record reveals, and so ignorant touching the obligations of an oath, as her testimony discloses, we cannot bring ourselves to believe the receipt of her testimony to be conducive to the due administration of justice.   See opinion on rehearing for collation of authorities.

**5.—Same—Justifiable Homicide—Precedents—Overruled.**

. We now re-affirm our holding in the original opinion, that we decline to follow the precedents holding that the husband may slay his wife, when he takes her in the act of adultery, and on such construction heretofore placed on Art. 122, C. C. P.   See the recent case of Billings v. State, 277 S. W. 687.

**6.—Same—Charge of Court—On Manslaughter—Erroneously Refused.**

Where ·appellant's defense to a homicide is that the deceased, his wife, was taken by him in the act of adultery at the time of the homicide, the court having submitted the issues raised by appellant's testimony as a justification of the killing, was not relieved of the duty of charging on the law of manslaughter. as that issue was raised by the same testimony of the appellant.   Following Billings v. State, supra.

Appeal from the District Court of Bexar County.   Tried below before the Hon. W. S. Anderson, Judge.

Appeal from a conviction of murder, penalty assessed at ·death.

The opinion states the case.,

*Watson & Chapin* of San Antonio, for appellant.

*C. M. Chambers,* District Attorney; *Carl Wright,* Assistant District Attorney; *Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the state.

BERRY, JUDGE.—The appellant was convicted in the District Court of Bexar County for the offense of murder and his punishment assessed at death.

The facts show that the deceased was the wife of the appellant and that the appellant killed both his wife and Juan Aranda, a young man between eighteen and nineteen years of age; the killing occurred at the home of the appellant.   It was the state's theory that the appellant had become tired of his wife and desired to live with another woman and that he brought the deceased Aranda to his house and killed him

first in order to predicate a defense thereon for killing his wife and that he afterwards killed his wife. It was the appellant's theory that the deceased and the boy Aranda were found by him in a compromising position which indicated to his mind that they were committing adultery just before the slaying. On this theory the appellant testified as follows:

"When I got home I pulled the rope off my horse and I just left him stand there and I walked in the house and I seen a fellow lying in the bed with my wife. There were no lights on in the house, but I saw this man and my wife lying on the bed together, on the middle bed, between two cots."

He further testified that he thought they were in the act of intercourse, adding:

"They were lying down * * *. I couldn't tell whether he was on top or whether they were on the side; their arms were around their bodies. When I opened the door they jumped off the bed, he ran toward the back door."

By his first bill of exception, the appellant complains at the court's action in permitting the daughter of the appellant to testify against him in the case. The bill shows that before the witness testified, the appellant was granted permission to interrogate her as to her competency under the law as a witness and in answer to said interrogatories the witness testified as follows:

"I am four years old, I cannot read and write. I have gone to school, but I didn't learn to read or write, they haven't given us books yet. I do not know what an oath in court is, I do not know what it is to be sworn in a case. I do not know what the penalty is if I testify falsely. I do not know what perjury is. I do not know what the penalty for perjury is. I do not know what the obligation of an oath is. I do know what they would do with me in court here for telling a falsehood, they can punish me. Nobody told me that. They can punish me by throwing me in the fire. The court here would throw me in the fire, the judge would take me and throw me in the fire.

"I know this gentleman right here, Mr. Bat Corrigan, the assistant district attorney. He speaks Spanish. He has not had me in the district attorney's office and talked to me in Spanish. He has talked to me, he talked to me in Spanish today about this case."

Upon the examination by the State as to her qualification, she testified as follows:

"I am going to tell the truth here. My father is Santos Jiminez. God would punish me if I didn't tell the truth here, he would throw me in the fire."

This constitutes all the testimony of the witness tending to show her competency as a witness and after she had testified as to her qualification, as above set out, the bill of exceptions shows that she was permitted by the court to give damaging testimony against the appellant. The bill of exceptions is signed by the court without any qualification or explanation and unless the above testimony shows that the witness was competent and qualified to testify then same is not shown anywhere in the bill of exceptions. Sec. 2, Art. 708, of our C. C. P. provides that all persons are competent to testify in criminal actions except the following:

"Children or other persons who after being examined by the court appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated or who do not understand the obligation of an oath."

It is well settled in this state that the competency of a child as a witness is to be determined by an examination before the court and the action of the trial court thereon will not be revised on appeal in the absence of a showing that its discretion was abused. Sec. 1771 Branch's P. C. for collation of authorities. It is also well settled, however, that children who after being examined by the court appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated *or who do not understand the obligation of an oath* are incompetent witnesses. Williams v. State, 12 Tex. Crim. App. 137; Holst v. State, 23 Tex. Crim. App. 9, 3 S. W. 757; Lawson v. State, 50 S. W. 346; Mays v. State, 58 Tex. Crim. Rep. 653, 127 S. W. 546; Colter v. State, 35 S. W. 174; Brown v. State, 176 S. W. 51; Anderson v. State, 226 S. W. 414.

From the statute above quoted, it appears that before a child of tender age is permitted to give evidence in a criminal case, two things must concur. First it must appear that the child possesses sufficient intelligence to relate transactions with respect to which he or she is interrogated, and second it must appear from the examination by the court or under its direction that said child understands the obligation of an oath. If the child fails in either of these two respects, then its testimony should be excluded. If it be conceded that the child in this case appears to possess sufficient intellect to relate transactions with respect to which she was interrogated, we think that she un-

questionably fell short in the other qualification, namely, that of being sufficiently advanced in intelligence to understand the obligation of an oath. The evidence quoted above shows that she had no conception of what an oath in court is and she didn't know what it was to be sworn in a case. It further shows that she had no conception of what the penalty is for testifying falsely. That she had no idea of what constitutes perjury or what the penalty therefor is. In fact, she categorically and affirmatively testified that she didn't know what the obligation of an oath is, and this statement is nowhere qualified or in any manner weakened by any other statement she made in her examination before the court. It is true that she testified that she knew they could punish her for telling a falsehood, but her idea as to the punishment is not sanctioned by either law or common sense. The question for the determination of the court was, did her testimony on the question of her competency show that she had "a realizing sense of the obligation of an oath?" We are satisfied that it was insufficient for this purpose. On the contrary, as above indicated, we think it clearly and affirmatively shows that she did not have such understanding, and we think the court was in error in permitting this child to testify, under the circumstances above detailed. An examination of the authorities last above cited, we think, will unquestionably disclose the correctness of this conclusion.

Appellant also complains at the court's action in refusing to charge on manslaughter in the case. This question has been fully discussed in an opinion by us this day delivered, in the case of Billings v. State, No. 9586, and under the authority of that case, we hold that the court was in error in refusing to charge the law of manslaughter in the instant case, and also that the court should not have charged on justifiable homicide under Art. 1220 P. C.

If the testimony detailed by the appellant as to what he saw transpiring between his wife and Aranda was sufficient to have commonly produced a degree of anger, rage or resentment in a person or ordinary temper sufficient to render the mind incapable of cool reflection, then it was the duty of the court to submit this matter to the jury for its determination. If his testimony is true when he came to his home he saw these parties lying on the bed and embracing each other. It is also true that he further testified that he thought they were having intercourse. There was testimony from the state that the parties were not having intercourse. As was said in the Billings case, supra, "to seriously contend that this course of con-

duct would not arouse in a person of ordinary temper a degree of anger, rage or resentment sufficient to render his mind incapable of cool reflection would be in effect to destroy all of the impulses that usually actuate men in their everyday relations in life." Nor in our opinion does the fact that appellant stated in his testimony that he thought they were in the act of intercourse, serve to deny him the right to have the issue of manslaughter submitted, notwithstanding the fact that the court charged justifiable homicide under Art 1220 P. C. The jury may not have believed all of the appellant's testimony. They may have concluded that he saw his wife and Aranda in a compromising position which even to his mind indicated less than actual copulation. And if the jury did so find, then they were left no alternative under the court's charge but to convict the appellant of murder. This was not a correct presentation of the issues to the jury. It seems to our minds clear that manslaughter was raised by the testimony and should have been given upon request of the appellant by the court in his charge to the jury.

There are many other errors alleged by the appellant but in view of the fact that they may ot arise in the same form on another trial of the case, a discussion of them is not deemed necessary.

For the errors above discussed, it is our opinion that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—State's counsel in an oral argument, as well as in a written motion showing research and ability, asks for a review of the reversal of the decision holding that in receiving the testimony of the child to which reference is made in the original opinion, error was committed.

In the motion the age of the child is treated as seven years. As the matter was before the court upon the record, as shown by the bill of exceptions, the child was only four years old. As stated in the original opinion, she was four years old, could not read nor write, and did not, in the opinion of this court, possess sufficient comprehension of the obligation of an oath to warrant

the receipt of her testimony. Courts and text-writers agree in the conclusions that when the child is only four years of age, extreme caution should be used in ascertaining its competency. In Hipple's case, 60 Tex. Crim. Rep. 542, the following quotation from Wharton's Crim. Evidence, Sec. 366, page 743, is taken:

"To permit a child under four years of age to be sworn and examined as a witness would be to trifle with public justice. Hence, the dying declarations of a child of four years have been properly held inadmissible, and the admissibility of children of that age, as witnesses, is, on the same reasoning, disputed. But the testimony of a child between four and five years of age, and that of a child between six and seven, has been received on the trial of an indictment charging an attempt to ravish. Four years has been assigned as the minimum age, but after this age the question of admissibility is to be decided by the court."

The statute declares one incompetent who does not appear to have sufficient intelligence to relate transactions with reference to which they are interrogated or who do not understand the obligations of an oath. It is not to be assumed that a child is to be examined in the same manner, nor to be expected to explain its comprehension of the obligation of an oath in like language or with such clearness as would be expected from an older person. From a text-writer we quote:

"He is competent if he possesses mental capacity and memory sufficient to enable him to give a reasonable and intelligible account of the transaction he has seen, if he understands and has a just appreciation of the difference between right and wrong, and comprehends the character, meaning and obligation of an oath. If the witness fulfills these requirements, it is immaterial as bearing upon its competency that he is unable to define the oath to definite testimony." (Underhill's Crim. Ev. 3rd Ed., Sec. 331.)

Where the child is not under four years of age, the intelligence and the knowledge of the obligation of an oath is primarily for the trial judge, and in the absence of an abuse of discretion, his decision will be final. See Anderson v. State, 88 Tex. Crim. Rep. 308, 110 S. W. Rep. 57; Zunago v. State, 138 S. W. Rep. 713; Partin v. State, 30 S. W. Rep. 1067; Click v. State, 66 S. W. Rep. 1104; Wren v. State, 264 S. W. Rep. 1007; Nicholas v. State, 270 S. W. Rep. 555; Branch's Ann. Tex. P. C., Sec. 1771, and cases cited. Where the conclusion of the trial judge upon the facts before him was clearly wrong, this court has frequently held that in receiving the testimony of a child, there

was harmful error. See Williams v. State, 12 Tex. Crim. App. 127; Holst v. State, 23 Tex. Crim. App. 9; Lawson v. State, 50 S. W. Rep. 346; Mays v. State, 58 Tex. Crim. Rep. 653; Anderson v. State, 88 Tex. Crim. Rep. 308. In a case where a child so young as the present record reveals, and so ignorant touching the obligations of an oath as her testimony discloses, we cannot bring ourselves to believe the receipt of her testimony to be conducive to the due administration of justice. It may be that upon another trial, with proper instructions touching the nature of the obligations of an oath and the knowledge acquired through the lapse of time, her testimony may appear in a more favorable light. Upon this record showing her age to be four years and her lack of comprehension such as disclosed, we are constrained to regard the receipt of her testimony as error. In the original opinion, we have declined to follow the precedents holding that the husband may slay his wife when he takes her in the act of adultery. We cannot, however, bring ourselves in accord with the view of state's counsel that in the present case a charge on the law of manslaughter was not required. The situation portrayed by the appellant's testimony, if true, was obviously such as to warrant the jury in concluding that his mind, by adequate cause, was rendered incapable of cool reflection. The truth or falsity of his words and his state of mind were matters for the jury to determine. The fact that the court instructed that the circumstances being such as the appellant in his testimony declared them to be, he would be justified in killing his wife does not, we think, answer the contention that a charge on manslaughter should have been accorded. The jury might shrink from deciding that one might deliberately take the life of his wife when taken in adultery and yet easily conclude that the act might so inflame his mind as to render the accused incapable of cool reflection. Upon this subject we refer to the remarks made in the Billings case, 277 S. W. Rep. 687.

With the foregoing comments, the state's motion for rehearing is overruled.

*Overruled.*