ROBERT WHITE v. THE STATE.

No. 6920.   Decided February 28, 1923.

1.—Arson—Confessions—Coercion—Practice in Trial Court.

Where, upon an appeal from a conviction of arson, the record showed that in addition to whipping the appellant the officers told him that if he did not confess they would take him to town and put him in the shocking machine, that they forced him to put his feet in the tracks found near the place of the arson, etc., held: that a confession obtained under such conditions is violative of the statutes and of the rights of the accused and is not voluntary, and inadmissible.

2.—Same—Child-Witness—Practice in Trial Court—Discretion of Court.

Under the rule prevailing in this State, touching the competency of a

child to testify, there was no error committed in admitting the testimony of the child witness in the instant case, under the discretion vested in the trial court. Following Munger v. State, 57 Texas Crim. Rep., 384, and other cases.

### 3.—Same—Charge of Court—Other Offenses—Weight of Evidence.

Where the charge of the court with reference to other transactions was on the weight of the evidence and harmful to the rights of the defendant, the same was reversible error, in view of the fact that the conviction depends upon circumstantial evidence.

### 4.—Same—Insufficiency of the Evidence—Circumstantial Evidence.

Where, upon trial of arson, the conviction depended upon circumstantial evidence, and taking into account the weakness of the evidence of guilt, and the charge of the court on the weight of the evidence, the judgment must be reversed and the cause remanded.

Appeal from the District Court of Harrison. Tried below before the Honorable P. O. Beard.

Appeal from a conviction of arson; penalty, five years imprisonment in the penitentiary.

. The opinion states the case.

*Myron G. Blaylock,* and *Y. D. Harrison,* for appellant.—On question of qualification of child-witness: Frazier v. State, 84 id., 360; Murphy v. State, 36 Texas Crim. Rep., 24.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—Conviction is for arson; punishment fixed at confinement in the penitentiary for a period of five years.

A "goober-house" belonging to Fannie Dunn was burned. The fire occurred at night and it was not discovered until the following day. Appellant, a negro boy about eighteen years of age, had previously been living at the home of Fannie Dunn, but a short time antecedent to the fire they had some unfriendly talk about the buying of a shirt, and the appellant left the house. According to her testimony, he came back to talk about a settlement between them and wanted to wear the shirt. Fannie Dunn testified that after the house was burned, she saw tracks in the sand between the orchard and the potato patch. The person making the tracks apparently had stepped over the wire fence and came to the hen house, walked down the potato row to the peanut house, and then to the cow-pen and into the road. The tracks described by her and other witnesses for the State were sock-feet tracks. There was a hole in the sock, about two inches across, which made an impression in the sand. The tracks went by the "goober-house" and passed the hen house and down the road to a bridge across a creek about a half-mile distant. Beyond the bridge, there were no sock-feet tracks but there were shoe tracks. The shoe tracks were traced to the home of the witness McCoy, where the appellant was found.

The officers who arrested the appellant forced him to put his sock-foot in the tracks founds at the Dunn home, and according to the State's witnesses, the foot fit the tracks. The witnesses were unable to say whether the tracks were fresh or old tracks except that they did not look very old.

Appellant testified that he was at McCoy's house at the time of the fire, and his testimony upon this subject was supported by several witnesses.

One witness for the State testified that he had spent the night on which the fire occurred at the home of a neighbor of the witness McCoy. Quoting him, he said:

"I got up about sun-up the morning after the peanut house was burned. When I got up, I seen Mr. Felix's wife and Felix, and Mr. Cap McCoy and his wife and Bessie Lee and Robert White. Robert was at Cap McCoy's house. I did not talk to Robert. He just spoke to me; he told us 'howdy,' and asked where I was going. I told him I was going home and he told me that if I seen anybody asking for him, 'don't tell them you saw me.'"

The witness said further that he heard the appellant say to Cap McCoy that "if I had got the turkey, wouldn't eat him now as Miss Fannie had been feeding her chickens "nux vomit" (nux vomic) for hawks. The testimony of this witness was controverted by appellant and other persons present at the McCoy home.

There was some evidence that the fire was caused by spontaneous combustion.

After appellant was arrested by officers, he was struck by one of them in the mouth. The officer said:

"I think I hit with my fist once and slapped him once. I struck him in the mouth as hard as I could hit him."

This officer also testified that the appellant was laid across a log; that his clothes were removed and that he was whipped by the officers with a switch, which one of them described as being "about the size of my little finger or a little larger than my little finger; it was as big as my biggest finger and was green. I didn't count the times I hit Robert."

In addition to whipping the appellant, the officers told him that if he did not confess, they would take him to town and put him in the "shocking machine." They forced him to put his feet in the tracks.

The statute, Article 810 of the Penal Code, permits the introduction of the confession of one accused of crime which is "voluntary." Both the Legislature and the courts have been alert to see that the confession was voluntary. We presume that the efforts of the officers in the instant case revealed by the testimony was directed to securing such a confession. In furtherance of these efforts, they were unsuccessful though doubtless proof of them impressed the jury that the officers believed appellant guilty. According to their own testimony, they

made an assault which was unlawful and accompanied by no mitigating or justifying circumstances. Confessions obtained under such conditionss are violative of the statute and of the rights of the accused. Zeal on the part of the officers should never lead them to use violence to procure a confession which the law demands shall be voluntary. See Williams v. State, 88 Texas Crim. Rep., 87, 225 S. W. Rep., 177; Bozeman v. State, 85 Texas Crim. Rep., 653; Robertson v. State, 81 Texas Crim. Rep., 387; Finks v. State, 84 Texas Crim. Rep., 536.

The witness who testified to the alleged declarations of the appellant was a ten-year old negro boy, whose qualification as a witness was challenged upon the ground that he had insufficient knowledge of the nature of an oath. On his voir dire, he said first that he did not know what would be done to him if he told a lie, but that he would be punished. On his cross-examination he said that he was not acquainted with the obligation of an oath, and did not know what an oath meant.

The bill presenting this question for review consists, in the main, of questions and answers, and we think is hardly sufficient to require consideration. Rylee v. State, 90 Texas Crim. Rep., 482. Suffice it to say that under the rule prevailing in this State, touching the competency of a child, we express the opinion that in admitting the testimony of the witness, the discretion vested in the trial court was not abused. See Branch's Ann. Tex. Penal Code, Sec. 1771 and cases listed; also Ake v. State, 6 Texas Crim. App., 402; Murphy v. State, 36 Texas Crim. Rep., 29; McCormick v. State, 52 Texas Crim. Rep., 494; Munger v. State, 57 Texas Crim. Rep., 384.

In instructing the jury, the court used this language:

"In this case the court had introduced evidence *tending to prove the theft of a turkey and a chicken* on or about the time the house was alleged to have been burned. You are instructed you can only consider such testimony for the purpose for which it was admitted, that is, to prove the guilt of the accused of the offense charged by the circumstances connected with the theft, if any, and you will consider it for no other purpose."

This charge was made the subject of an exception because it was on the weight of the evidence. It is couched in language which has heretofore been so characterized. See Leach v. State, 46 Texas Crim. Rep., 509; Reese v. State, 44 Texas Crim. Rep., 34; Hollar v. State, 73 S. W. Rep., 961; Cortez v. State, 74 S. W. Rep., 907; Cavaness v. State, 45 Texas Crim. Rep., 209; Gustamente v. State, 81 Texas Crim. Rep., 640, 197 S. W. Rep., 999; Reese v. State, 70 S. W. Rep., 424.

The evidence that appellant stole a chicken and a turkey is meager and inconclusive. They were not found in appellant's possession. Fannie Dunn said that she lost a chicken and a turkey. She did not describe them nor state the kind of feathers they were. A witness testified that every once in a while he saw some feathers between the house of Fannie Dunn and the bridge, some of which were black and

other Plymouth Rock; that he also saw feathers about the chicken house. There was testimony that there were feathers about the premises of McCoy; that feathers were found about the barn-yard and upon the road, but in the absence of some definite identification of the feathers with the lost fowls, this evidence, considered alone, is of little weight.

The evidence of appellant's guilt is not so conclusive as to render harmless the charge mentioned. Circumstances alone were relied upon. The evidence touching the sock-foot tracks about the premises and in the road going as far as the bridge is not altogether inconsistent with the innocence of the accused. He had been an inmate of the home up to one or two days before the fire occurred, and he had walked about the premises. Whether in his sock-feet or otherwise is not disclosed; whether the tracks were fresh or old is not shown. The sandy character of the ground, according to some of the testimony, rendered it difficult to identify the tracks. Assuming, however, that they were his tracks, there is an absence of evidence of tracks coming to the premises. The person who made those found was going away, and according to the theory of the State, was going to the home of Cap McCoy, where the appellant was found. He went from the home of Fannie Dunn to that of Cap McCoy only a short time before the fire. The person who made the sock-foot tracks made that character of tracks no further than the bridge, which was a half mile from the home of Fannie Dunn, and as we understand the record, about a quarter of a mile from that of Cap McCoy. There were tracks made by some one who was shod from the bridge to the home of McCoy. Appellant, when arrested, had on a pair of shoes. Upon the subject of a comparison of the shoes that appellant was wearing with the tracks which were made by the person shod and going from the bridge to McCoy's home, the record is silent. The State's witnesses were in possession of the shoes and of knowledge of the tracks. Whether the evidence would have been favorable to the appellant or not is left in doubt. In a case of circumstantial evidence, inferences from evidence not introduced which are in the possession of the State are in favor of and not against the accused. See Parrish v. State, 85 Texas Crim. Rep., 75. Footprints, when associated with other incriminating circumstances, are often important elements in a case of circumstantial evidence. Finch v. State, 89 Texas Crim. Rep., 367. But when not so associated, they have often been deemed inadequate to identify the accused. See Warren v. State, 52 Texas Crim. Rep., 218; Gill v. State, 36 Texas Crim. Rep., 594.

Taking into account the weakness in the evidence of guilt, the charge of the court to which we have adverted is deemed of a nature calculated to injure the rights of the appellant.

From what has been said, it follows that in the opinion of the court,

the judgment should be reversed and the cause remanded, and this is ordered.

*Reversed and remanded.*