Jose Luis LUJAN, Appellant,

v.

STATE of Texas, Appellee.

No. 04–81–00063–CR.

Court of Appeals of Texas,
San Antonio.

Dec. 30, 1981.

Rehearing Denied Jan. 15, 1982.

Discretionary Review Refused
April 7, 1982.

Dan Dennis Hartnett, San Antonio, Jose Luis Lujan, pro se, for appellant.

Bill M. White, Dist. Atty., Douglas V. McNeel, Asst. Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CANTU, JJ.

## OPINION

CANTU, Justice.

The offense is indecency with a child. The punishment is life imprisonment as a habitual offender. Trial was to a jury on both phases upon an indictment alleging two prior convictions for enhancement.

In three separate grounds of error appellant challenges the sufficiency of the evidence to support the jury verdict. We are required to view the evidence in the light most favorable to the verdict and in so doing a factual summary of the evidence adduced at the trial reveals that on November 11, 1978, sometime after 2:00 p. m., appellant drove up in his El Camino truck to the residence of G_____ and L_____ L_____ located in the City of San Antonio, Texas. Appellant is the brother of L_____ L_____.

The L_____s were not at home, having gone shopping earlier in the day and having left their three minor children, Tony aged 10, Philip aged 11 and the prosecutrix aged 6 alone at home. Appellant, known as Uncle Joe to the children, asked the six year old prosecutrix if she wanted to go to the store with him. The prosecutrix acquiesced with permission of her eleven year old brother, Philip, and left with appellant.

Shortly thereafter, Mr. and Mrs. L_____ returned and learned that the prosecutrix had gone with appellant. The L_____s looked for the child, reported the incident to police and enlisted the aid of other relatives in looking for appellant and prosecutrix. At approximately 12:30 a. m., on November 12, 1978, appellant's stepbrother, David C. Cardenas, located appellant's El Camino truck off on the side of the road near the intersection of S. Presa and Military Drive in San Antonio.

Cardenas observed that one of the rear tires of appellant's vehicle was flat and that there was no spare tire or jack. He also saw prosecutrix standing on the front seat of the vehicle and appellant asleep behind the wheel. The child was fully dressed and her clothes did not appear to be disturbed. Cardenas believed appellant to be drunk and observed two empty "tallboy" beer cans on the floorboard of the vehicle.

Appellant and prosecutrix were driven back to the L_____s' residence by Cardenas. Neither appellant nor the child said anything during the drive. When they reached the L_____ residence Cardenas took the child in the house but allowed appellant to remain in the car. Once inside, Mr. L_____ "got after" the child in the living room and sent her to one of the bedrooms with Mrs. L_____. Mrs. L_____ spoke to the prosecutrix alone in the back bedroom and subsequently called her husband into the bedroom.

The police were called and upon their arrival Mr. L_____, pointing to appellant sitting in Cardenas' vehicle, ordered appellant's arrest for rape. Appellant broke and ran a short distance but was captured and arrested by the police.

After some further interviews by the police with the L_____s and the child, appellant was charged with indecency with a child. On March 13, 1978, appellant's jury trial began and continued through the next day. After the State had rested its case, appellant moved for and was granted a mistrial.

The second trial began immediately after the first jury was discharged by the trial court. The State essentially repeated the same evidence offered at the initial trial.

David C. Cardenas, testifying about locating appellant and the prosecutrix, said that as soon as the child saw him she went up to him but appeared to be scared and would not respond to his questions. The prosecutrix testified that appellant, her uncle Joe, picked her up at her home and took her to a store where he bought her a soda and Cracker Jacks. They then drove around for awhile until the vehicle came to a stop.

Appellant then told the prosecutrix to pull down her pants when she finished her soda. The child refused to do so and appellant then pulled them down himself. Further examination by the State reflects the following colloquy:

Q: And after he pulled down your pants, what did he do?

A: With his finger he put it on the front and back.

Q: Front and back of where, on your body?

A: Yes, sir.

Q: Where you go to the restroom, K_____?

A: Yes, sir.

Q: And after he did that, did he do anything else to you? K_____, did he make you do anything?

A: Yes, sir.

—Defense objection overruled—

Q: And did he make you do anything, K_____?

A: Yes, sir.

Q: What did he make you do, K_____?

A: Put my mouth where he uses the restroom.

The prosecutrix further stated that appellant had told her not to tell anybody.

Mr. L_____ described the prosecutrix, upon being returned home by Cardenas, as being "shook up", "scared" and "trembling." Mrs. L_____ testified, without objection, that immediately upon the prosecutrix's arrival at home, she took her aside to talk to her about where she had been. The child was hesitant about discussing the matter but eventually responded.[1]

The following colloquy then took place:

Q: And what happened when she came home? When David brought her home, what did you do?

1. The testimony of the child's mother was admissible, in any event, as part of the outcry of the young victim. *Jundt v. State*, 164 Tex. Crim. 437, 300 S.W.2d 73 (1957); *Muench v. State*, 170 Tex.Crim. 437, 341 S.W.2d 653 (1960).

A: Well, I talked to her, told her where—I wanted to know where she was.

Q: And did she want to tell you?

A: No.

Q: Okay. And what did you tell her?

A: I told her if anything happened to tell me, that I wouldn't get mad at her, that was the only way she could tell me.

Q: And did she tell you after you told her that?

A: Well, at first she didn't want to until—because she told me if I knew about it that Joe said that I would get mad about it.

Q: Did she tell you what happened?

A: Yes.

Q: And what did she tell you?

A: She told me that Joe pulled her pants down, her panties down.

Q: And what else did she tell you?

A: And he started kissing her and putting her finger in her—I don't know how—

Q: In the front, in the vagina?

A: Yes. Yes. And then he made her kiss his—

Q: His penis?

A: Yes.

Appellant did not testify but simply called the court reporter as his only witness in an effort to impeach the child with a prior inconsistent statement involving another alleged sexual act.

Appellant maintains that the testimony of the prosecutrix "with his finger he put *it* on the front and back [of her body] where she goes to the restroom" is insufficient to sustain the allegation in the indictment that appellant did engage in sexual contact by touching the vagina of the prosecutrix.

Appellant was indicted for the offense of indecency with a child under the provisions of Tex.Penal Code Ann. § 21.11 (Vernon 1974), which provides in relevant part:

2. By legislative amendment, the phrase "or the breast of a female 10 years or older" was deleted and replaced with the single word "breast".

(a) A person commits an offense if, with a child younger than 17 years and not his spouse, whether the child is of the same or opposite sex, he:

(1) engages in sexual contact with the child; . . . .

At the time of the offense and trial, sexual contact was defined by § 21.01 as:

(2) . . . any touching of the anus or any part of the genitals of another person or the breast of a female 10 years or older with intent to arouse or gratify the sexual desire of any person.[2]

The indictment, with formal parts omitted, alleged:

. . . on or about the 11th day of November, A.D., 1978, Jose Luis Lujan, hereinafter called defendant, did then and there intentionally and knowingly engage in sexual contact with K_____ L_____, hereinafter called complainant, a female child not then and there the spouse of the defendant, younger than seventeen (17) years of age, by then and there touching the vagina of the said complainant with the intent to arouse and gratify the sexual desire of the defendant . . . .

Initially, we note that the indictment would have sufficiently charged an offense by simply alleging a touching of any part of the genitals without specifying the vagina. *Clark v. State*, 558 S.W.2d 887 (Tex.Crim. App.1977). Having particularly alleged "the vagina," the State was required to prove a touching of the vagina to satisfy the burden of proof undertaken.

In *Clark v. State, supra*, argument was made that the State had failed to prove the commission of an offense because § 21.11, does not include the urinary opening in the definition of "sexual contact" but is limited only to the anus and genitals. The Court of Criminal Appeals in rejecting the argument held that the statute includes the touching of "any part of the genitals" of a person, thus including more than just the vagina in its definition.

Acts 1979, 66th Leg., p. 373, ch. 168, § 1, eff. Aug. 27, 1979.

The court further held that the definition of "genitals" includes the vulva which immediately surrounds the vagina. Citing *Ball v. State,* 163 Tex.Crim. 214, 289 S.W.2d 926 (1956) and *Pendell v. State,* 158 Tex. Crim. 119, 253 S.W.2d 426 (1952). "Vulva" is defined as the external parts of the female genital organs, including the labia majora, the labia minora, mons veneris, clitoris, perineum, and the vestibule or entrance of the vagina. The Simplified Medical Dictionary for Lawyers (B. Maloy 2d ed. 1951) 571; see also Gray's Anatomy (C. M. Goss 25th ed. 1951) 1317. "Vagina" has been defined as the genital canal in the female, extending from the uterus to the vulva. Stedman's Medical Dictionary (3d unabridged Lawyer's Ed. 1972) 1367. Thus, under prior Texas case law, "genitals" has been held to include both the vagina and the vulva. *Ball v. State, supra; Pendell v. State, supra.* The particularized pleading by the State alleging a touching of the vagina would require no less than proof of a touching of the vagina or some constituent part thereof, and we would be remiss in our duty to require any less from the State to satisfy its burden of proof.

Under the predecessor statute, Tex.Penal Code Ann. art. 535d (1925), it was the consistent practice of our Court of Criminal Appeals to uphold convictions where the indictment alleged a placing of the hands on the vulva and the proof showed the placing of the hand on the "private parts" of the prosecutrix. *Tyra v. State,* 534 S.W.2d 695 (Tex.Crim.App.1976); *Whatley v. State,* 488 S.W.2d 422 (Tex.Crim.App. 1972); *Mounce v. State,* 432 S.W.2d 104 (Tex.Crim.App.1968); *Thomas v. State,* 399 S.W.2d 555 (Tex.Crim.App.1966); *Baladez v. State,* 165 Tex.Crim. 647, 310 S.W.2d 113 (1958); *Ball v. State, supra.*

■ In examining the prosecutrix's testimony, we must do so keeping in mind the tender age of the victim in light of the language in *Clark v. State, supra* :

> It is important to note that in a prosecution under § 21.11 V.T.C.A., Penal Code, the victim is a child, and may well be very young. As such, the child may lack

the technical knowledge to accurately describe parts of his or her body. Where the child has sufficiently communicated to the trier of fact that the touching occurred to a part of the body within the definition of § 21.01, the evidence will be sufficient to support a conviction regardless of the unsophisticated language that the child uses. For this Court to hold otherwise would be to frustrate the intent of the statute.

558 S.W.2d, at 889. We think the expression, "with his finger he put it on the front and back" where she "goes to the restroom," together with the testimony of the child's mother on the outcry, sufficiently describes a touching of the vagina to satisfy the proof required under the indictment and statute.

Appellant vigorously contends that there is no proof to show what the child meant by the word "it" in the expression "with his finger he put *it,*" etc. and, therefore, no evidence of a touching by appellant of the child. We do not construe the statute to limit the proscribed conduct to a touching of the child's genitals by the hands of the accused. If the evidence were to show that an accused, by manipulating the victim's fingers, placed the victim's own fingers into the victim's vagina with the intent to arouse and gratify the sexual desire of the accused, we would have no reservation in holding that a violation of § 21.11 had occurred.

Similarly, our Court of Criminal Appeals has held in *Jacquez v. State,* 579 S.W.2d 247 (Tex.Crim.App.1979), that sexual contact condemned by the statute can occur when the accused forces the complainant to touch the accused's genitals. Nothing in the statute or in the indictment limits the State to proof that the offensive touching of the prosecutrix was with appellant's hands. In fact, a reading of the mother's testimony reflects that the child told her that appellant began putting *her* finger in her vagina. Viewing the evidence in its entirety, the jury was justified in concluding that the touching occurred precisely in such manner, and we may not speculate that they did not so find.

The State of New York has enacted a similar penal statute condemning sexual contact with minors.[3] In interpreting sexual contact, the New York courts have held the term "touching" to apply only to those instances where there is digital manipulation or manual handling or fondling. *People v. Kittles*, 102 Misc.2d 224, 423 N.Y.S.2d 107 (1979). We think the definition of "touching" given by the court in *Kittles* to be consistent with a touching of the victim's vagina by manipulating the victim's own fingers and inserting them into the victim's vagina.

We are unwilling to disregard the interpretation by the mother of the child's narration during the outcry. *See and compare Clark v. State, supra.* The child's language, although unsophisticated, was a sufficiently clear and concise recital of the events. Even if the child made inconsistent statements as to details of the offense or gave much of her testimony in response to leading questions, her testimony would not be rendered incompetent for those reasons. We reject appellant's contention that the evidence is insufficient to support the jury verdict.

In another ground of error appellant complains that the trial court erred in admitting the testimony of the prosecutrix after it was established that she was not competent to testify. The contention is without merit for various reasons.

■ Appellant never objected during the trial to the testimony of the child on the basis of incompetency to testify and he may not do so now for the first time on appeal. *Franco v. State*, 492 S.W.2d 534 (Tex.Crim. App.1973); *Whatley v. State*, 488 S.W.2d 422 (Tex.Crim.App.1972); *Cannon v. State*, 458 S.W.2d 66 (Tex.Crim.App.1970); *Morgan v. State*, 403 S.W.2d 150 (Tex.Crim. App.1966).

■ No issue of competency to testify was made during prosecutrix's testimony at the first trial.[4] Nevertheless, appellant argues that because the child failed to respond to some questions, was impeached on a collateral incident and stated she did not know the difference between the truth and a story, the trial court should have *sua sponte* declared her incompetent to testify.

The prosecutrix testified at the first trial that she knew it was wrong to tell a lie and that God would punish her if she did. The only objections by appellant were to the asking of leading questions.

Although no hearing was had outside the presence of the second jury on the prosecutrix's competency to testify at the second trial, none was required because the child's competency had already been established without objection. We think the testimony from the prior trial served the same purpose as a separate hearing; therefore, the trial court was not required to conduct a repetitive hearing, particularly in the absence of an objection.

Tex.Code Crim.Pro.Ann. art. 38.06 (Vernon 1979) provides:

All persons are competent to testify in criminal cases except the following:

\* \* \* \* \* \*

2. Children or other persons who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath.

In *Fields v. State*, 500 S.W.2d 500 at 502 (Tex.Crim.App.1973), our Court of Criminal Appeals stated:

The competency of a witness to testify is generally a question for determination by the trial court and its ruling in that regard will not be disturbed on appeal unless an abuse of discretion is shown . . .

---

3. § 130.65, New York Penal Law [McKinney's]:
 A person is guilty of sexual abuse in the first degree when he subjects another person to sexual contact . . .
 (3) When the other person is less than eleven years old.

4. At the second trial appellant simply objected,

"Mr. Hartnett: I would like the witness asked if she knows what a lie is. I think she hasn't been qualified with that respect."
After the child answered, the matter was no longer pursued and, presumably, appellant was satisfied with the answer.

Further, it is well established that even though a child states he does not know the meaning of an oath or what it means to swear, he may nevertheless be a competent witness if he knows it is wrong to lie and that he will be punished if he does so.

See also Provost v. State, 514 S.W.2d 269, at 270 (Tex.Crim.App.1974).

In Provost v. State, supra, the witness was a 13-year-old girl who admitted that she did not understand the meaning of an oath. She stated that she knew the difference between telling the truth and a lie and knew it was important that she tell the truth. She further recognized she could get in trouble for not telling the truth and acknowledged that when she swore she was making a promise to tell the truth. She was held to be a competent witness. For similar holdings see Melton v. State, 442 S.W.2d 687 (Tex.Crim.App.1969); Franks v. State, 166 Tex.Crim. 455, 314 S.W.2d 586 (1958); Hines v. State, 160 Tex.Crim. 284, 268 S.W.2d 459 (1954); Rocha v. State, 148 Tex.Crim. 237, 186 S.W.2d 267 (1945); Gonzales v. State, 113 Tex.Crim. 439, 22 S.W.2d 674 (1929); Hennington v. State, 101 Tex. Crim. 12, 274 S.W. 599 (1924); White v. State, 93 Tex.Crim. 532, 248 S.W. 690 (1923); Munger v. State, 57 Tex.Crim. 384, 122 S.W. 874 (1909); Anderson v. State, 53 Tex.Crim. 341, 110 S.W. 54 (1908); Sancedo v. State, 69 S.W. 142 (1902); Click v. State, 66 S.W. 1104 (1902); Scroggins v. State, 51 S.W. 232 (1899).

■ In Nicholas v. State, 99 Tex.Crim. 504, 270 S.W. 555, at 556 (1925) the Court of Criminal Appeals said:

In testing the competency of a child witness, the law permits the use of simple words, and does not demand that a child possess or comprehend a vocabulary such as would be expected of an adult. The test applied is not the age, but the intelligence of the child.

The ability to give a clear and concise recital of the events and knowledge of the fact that falsehood will entail punishment, are cogent factors supporting the theory of competency.

In determining whether the trial court has abused its discretion in holding a child witness to be competent to testify we are required to examine the entire testimony of the child. Melton v. State, supra; Provost v. State, supra; Jundt v. State, supra.

■ There is no precise age under which a child is deemed incompetent. Douglass v. State, 73 Tex.Crim. 385, 165 S.W. 933 (1914); Hawkins v. State, 27 Tex.App. 273, 11 S.W. 409 (1889). See Wheeler v. United States, 159 U.S. 523, 16 S.Ct. 93, 40 L.Ed. 244 (1895), [5½ year old boy]; Clark v. State, supra, [5½ year old girl]; Tyra v. State, supra, [9 year old girl]; Provost v. State, supra, [13 year old girl]; West v. State, 511 S.W.2d 502 (Tex.Crim.App.1974), [2 boys ages 8 and 11]; Fields v. State, supra, [4 year old boy]; Whatley v. State, supra, [14 year old girl]; Melton v. State, supra, [13 year old girl]; Franks v. State, supra, [8 year old boy]; Jundt v. State, supra, [9 year old girl]; Ball v. State, supra, [11 year old girl]; Hines v. State, supra, [9 year old girl]; Rocha v. State, supra, [11 year old girl]; Nicholas v. State, supra, [7 year old girl]. See also State v. Juneau, 88 Wis. 180, 59 N.W. 580 (1894), 24 L.R.A. 857, [4½ year old girl].

■ We think the testimony of prosecutrix fell well within acceptable guidelines and that she was competent to testify within the meaning of Tex.Code Crim.Pro.Ann. art. 38.06 (Vernon 1979). Appellant's ground of error is overruled.

In his second ground of error appellant alleges that the trial court committed reversible error by failing to grant his motion to quash the indictment because the indictment was not officially signed by the foreman of the grand jury as required by Tex. Code Crim.Pro.Ann. art. 21.02(9) (Vernon 1966).

Article 21.02(9) provides:

An indictment shall be deemed sufficient if it has the following requisites:

&ast; &ast; &ast; &ast; &ast; &ast;

(9) It shall be signed officially by the foreman of the grand jury.

An examination of the indictment reveals that it was signed by Nancy N. Kerr, assistant foreman of the grand jury. The day before appellant's first jury trial began, a handwritten motion entitled "Motion to Quash Indictment" was filed by appellant's attorney. The instrument contains a file mark but no indication that it was ever brought to the trial court's attention is apparent from the instrument itself or from the remaining appellate record. We are in no position to assume that it was ever acted upon by the trial court and in the absence of proof otherwise, error, if any, has not been preserved. *American Plant Food Corporation v. State*, 508 S.W.2d 598 (Tex.Crim.App.1974).

Even if appellant had secured a ruling from the trial court on his motion, it has uniformly been held that the signature of the grand jury foreman is not essential to the validity of the indictment. *McCullough v. State*, 425 S.W.2d 359 (Tex.Crim.App. 1968); *Ex Parte Landers*, 366 S.W.2d 567 (Tex.Crim.App.1963); *Anderson v. State*, 122 Tex.Crim. 339, 55 S.W.2d 850 (1932); *Searcy v. State*, 89 Tex.Crim. 550, 232 S.W. 799 (1921); *Parkinson v. State*, 87 Tex. Crim. 176, 220 S.W. 774 (1920). Since the omission of the foreman's signature does not invalidate the indictment, it is permissible for another grand juror to sign the indictment in place of the foreman. *Owens v. State*, 540 S.W.2d 324 (Tex.Crim.App. 1976); *Parkinson v. State, supra.* This ground of error is without merit and is overruled.

In his third and fourth grounds of error, appellant claims the trial court committed reversible error in denying his motion for continuance and in forcing him to trial immediately after declaring a mistrial, after the State had rested its case in the first trial. Appellant argues that he needed the extra time to have the testimony of the State's witnesses from the first trial available.

Appellant acknowledges that his motion for continuance was not in compliance with Tex.Code Crim.Pro.Ann. arts. 29.03 (Vernon Supp. 1980–1981), 29.08 and 29.13 (Vernon 1966). The motion had not been reduced to writing and had not been sworn to; however, he argues that he was entitled to ten days preparation time under Tex.Code Crim.Pro.Ann. art. 26.04(b) (Vernon 1966), following the granting of the mistrial.

The State correctly points out in its brief that counsel for appellant was appointed to represent appellant some three and one-half months prior to his announcement of ready at the first trial. Immediately following the granting of the mistrial the following transpired:

> Mr. Hartnett [defense counsel]: Your Honor, at this time my client has asked that I request the court a continuance to allow him to prepare his defense.
>
> The Court: It will be overruled. All right bring in the panel.

> \* \* \* \* \* \*

> The Court: All right. I will now call for announcement in the case of the State of Texas versus Jose Luis Lujan. What says the State?
>
> Mr. Canales [prosecutor]: The State is ready, Your Honor.
>
> The Court: What says the defense?
>
> Mr. Hartnett: Defense is ready, Your Honor.

Having failed to insist on his motion for continuance, in addition to failing to comply with the provisions of Articles 29.03, 29.08 and 29.13, *supra*, addressing continuances, appellant waived any claim of error. *Carpenter v. State*, 473 S.W.2d 210 (Tex. Crim.App.1971); *Cline v. State*, 463 S.W.2d 441 (Tex.Crim.App.1971); *Finch v. State*, 399 S.W.2d 544 (Tex.Crim.App.1966); *Abel v. State*, 395 S.W.2d 641 (Tex.Crim.App. 1965), *cert. denied*, 386 U.S. 928, 87 S.Ct. 871, 17 L.Ed.2d 800 (1967). Furthermore, because appellant had just had the benefit of the testimony of the State's witnesses, in addition to the testimony developed earlier at an examining trial, together with the notes taken at both hearings, appellant is not in a position to complain about the denial of additional time to have the testimony reduced to writing.

■ We also note that appellant offered some of the testimony from the first trial through the court reporter for impeachment at the second trial. We perceive no error from the trial court's denial of the motion for continuance. Nor can we agree with appellant that Tex.Code Crim.Pro. Ann. art. 26.04(b) (Vernon 1966), entitles him to an additional ten days to prepare following the granting of a mistrial. Article 26.04 provides:

(a) Whenever the court determines at an arraignment or at any time prior to arraignment that an accused charged with a felony or a misdemeanor punishable by imprisonment is too poor to employ counsel, the court shall appoint one or more practicing attorneys to defend him. In making the determination, the court shall require the accused to file an affidavit, and may call witnesses and hear any relevant testimony or other evidence.

(b) The appointed counsel is entitled to ten days to prepare for trial, but may waive the time by written notice, signed by the counsel and the accused.

Paragraph (b) must be read in conjunction with paragraph (a) and in doing so, it is apparent that the ten day preparation period refers to the actual preparation time and not the time of formal appointment. *Henson v. State*, 530 S.W.2d 584 (Tex.Crim.App. 1975). Appellant's third and fourth grounds of error are overruled.

■ Appellant next alleges that the trial court committed reversible error in failing to grant his motion to set aside the indictment and for discharge pursuant to the provisions of Tex.Code Crim.Pro.Ann. art. 32A.02 (Vernon Supp. 1980–1981). There is, however, no discussion, argument or authorities advanced in support of the assertion. Although two such motions were filed with the court, none appear to have been presented to the court for a ruling. In the absence of something other than the mere assertion of error, we consider the motions abandoned and waived, and not preserved for review by the court. *Williams v. State*, 535 S.W.2d 637 (Tex.Crim. App.1976); *Brantley v. State*, 522 S.W.2d 519 (Tex.Crim.App.1975).

■ Appellant next contends that the trial court misdirected the jury in its instructions by alluding to appellant's privilege to not testify. Specifically, appellant claims the instruction amounts to a comment on appellant's failure to testify. The court's instruction was as follows:

Our law provides a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded a defendant; and in the event he elects not to testify, that fact cannot be taken as a circumstance against him.

In this case, the defendant has elected not to testify; and you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him.

The court's instruction correctly tracks Tex.Code Crim.Pro.Ann. art. 38.08 (Vernon 1979), and is substantially the same as appears in MORRISON AND BLACKWELL, 8 TEXAS PRACTICE: CRIMINAL FORMS (8th ed. 1977) § 80.10. The foregoing instruction, even over defense objection, does not violate an accused's constitutional privilege against compulsory self-incrimination guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. *Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978). Better practice, however, would dictate that trial judges omit such instruction when requested by the defense to do so. *Lakeside v. Oregon*, 435 U.S., at 340–341, 98 S.Ct. at 1095–1096, 55 L.Ed.2d, at 326; *Rogers v. State*, 486 S.W.2d 786 (Tex.Crim.App.1972); *Hill v. State*, 466 S.W.2d 791 (Tex.Crim. App.1971). The ground of error is overruled.

■ Appellant's next contention is that the trial court erred in admitting, over his objection, State's exhibits four and five at the punishment phase of the trial. The State offered four "pen packets" consisting of State's exhibits two through five. Exhibits two and three were offered to prove up the two prior convictions alleged in the

indictment for enhancement. Exhibits four and five were offered by the State to prove up appellant's prior criminal history. Appellant, claiming surprise, objected to the introduction of these "pen packets" on the ground that they contained extraneous offenses which were not pleaded in the indictment.

By virtue of Tex.Code Crim.Pro.Ann. art. 37.07, § 3 (Vernon 1981), the State is permitted to prove up appellant's prior criminal record and, in so doing, is not limited to the prior convictions alleged in the indictment for enhancement purposes. *Montgomery v. State*, 506 S.W.2d 623 (Tex.Crim. App.1974); *Martinez v. State*, 469 S.W.2d 185 (Tex.Crim.App.1971); *Puentes v. State*, 463 S.W.2d 730 (Tex.Crim.App.1971).

The trial court did not err in admitting the exhibits. Furthermore, appellant did not avail himself of the benefits of Tex.Rev. Civ.Stat.Ann. art. 3731a (Vernon Supp. 1980–1981), to obtain copies of the proposed exhibits by timely pretrial motion. *See Pendleton v. State*, 434 S.W.2d 694 (Tex. Crim.App.1968). The ground of error is overruled.

■ In his eleventh ground of error appellant maintains the trial court misdirected the jury in its charge on punishment. The gist of the complaint is that the charge in question was unintelligible and shifted the burden of proof to appellant. Appellant actually complains of two separate instructions. The first instruction complained of reads:

If you find from the evidence beyond a reasonable doubt or have a reasonable doubt that the defendant has not been previously convicted on any felony as alleged in Paragraph Two and Paragraph Three of the indictment, you will so state —. . . .

No argument or authority is offered by appellant in support of his contention as required by Tex.Code Crim.Pro.Ann. art. 40.09(9) (Vernon 1979). In fact, it is not clear how appellant was harmed by the instruction, nor do we understand appellant to even assert harm.[5]

We note that the portion of the charge complained of is but an excerpt from a long and comprehensive charge on punishment as applicable to subsequent offenders. Such being the case, the entire charge must be examined as a whole and not in fragments. *Pittman v. State*, 554 S.W.2d 190 (Tex.Crim.App.1977); *Bailey v. State*, 532 S.W.2d 316 (Tex.Crim.App.1975); *Peterson v. State*, 508 S.W.2d 844 (Tex.Crim.App. 1974).

■ When read in its entirety, we find that the charge is not misleading and could not have confused the jury.[6] Standing alone, the portion complained of might be confusing, and we suggest that the trial court refer to the suggested charges on punishment found in State Bar of Texas, Texas Criminal Pattern Jury Charges, and to Morrison and Blackwell, 8 Texas Prac-

---

**5.** Appellant states in his brief that the portion of the charge complained of remains unintelligible to him and offers to abandon the complaint if the State will explain what it means.

**6.** The other portions of the charge, as here relevant, read as follows: *If you find from the evidence beyond a reasonable doubt that the defendant has previously been finally convicted of the two felony offenses, as alleged in the indictment, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, you will so state by your verdict, and it will be the Trial Judge's duty to impose punishment.*
*If you find from the evidence beyond a reasonable doubt that the defendant has only been once before convicted of a felony as alleged in*

either Paragraph Two or Paragraph Three of the indictment, you will so state by your verdict and assess the defendant's punishment at confinement in the Texas Department of Corrections for a term of years not more than 20 or less than 2. In addition to imprisonment you may assess a fine not to exceed $10,000.
*If you find from the evidence beyond a reasonable doubt or have a reasonable doubt that the defendant has not been previously convicted of any felony* as alleged in Paragraph Two and Paragraph Three of the indictment, you will so state by your verdict and assess the defendant's punishment at confinement in the Texas Department of Corrections for a term of years not more than 10 or less than 2. In addition to imprisonment you may assess a fine not to exceed $5,000. (Emphasis added).

tice: Criminal Forms (8th ed. 1977), § 81.-05, pp. 148–150, to avoid the problem presented in *Guerra v. State*, 169 Tex.Crim. 70, 71, 331 S.W.2d 941 (1960).

The second portion of the charge complained of reads:

In all criminal cases the burden of proof remains on the State until the Defendant's identity is established by legal evidence beyond a reasonable doubt; . . . .

The objection to this portion of the charge was that it failed to begin with the phrase "In the punishment phases of all criminal cases . . . ."

On appeal, appellant complains that the charge as submitted shifted the burden of proof and did not properly instruct the jury thereon. The contention on appeal does not comport with the objection made at trial; therefore, nothing is preserved for review. *Sloan v. State*, 515 S.W.2d 913 (Tex.Crim. App.1974); *Campbell v. State*, 492 S.W.2d 956 (Tex.Crim.App.1973).

■ The portion of the charge complained of is only part of the actual instruction given by the court. The remaining portion of the instruction advised the jury, ". . . and in case you have a reasonable doubt of the Defendant's identity you will find the allegations in the second and third paragraph of the indictment to be 'not true'." When read as a whole, the instruction is not objectionable for the reasons advanced by appellant on appeal. Appellant's eleventh ground of error is overruled.

■ In his final ground of error appellant asserts:

The verdict of the jury on the issue of punishment was uncertain, indefinite and void in that there is no affirmative finding in this enhancement situation that the second previous felony conviction was for an offense that overruled [sic] subsequent to the first previous conviction having become final.

We interpret appellant's complaint to mean that the verdict form must state that the second previous felony conviction is for an offense that *occurred* subsequent to the first previous conviction having become final.

Tex.Penal Code Ann. § 12.42(d) (Vernon 1974) provides:

If it be shown on the trial of any felony offense that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final on conviction he shall be punished by confinement in the Texas Department of Corrections for life.

An examination of the jury's verdict together with the indictment reveals this contention to be without merit.

The jury's verdict reads:

### VERDICT FORM

We, the Jury, having found the defendant, Jose Luis Lujan, guilty of the offense of Indecency with a child, as charged in the first paragraph of the indictment, do further find that he is one and the same person who was duly, legally and finally convicted in Cause Number 69–699–A of the offense of Burglary with intent to commit theft, *as alleged in the second paragraph of the indictment* and further find that he is one and the same person who was duly, legally and finally convicted in Cause Number 64328 of the offense of Burglary with intent to commit theft *as alleged in the third paragraph of the indictment* and find that all the allegations in the second and third paragraphs of the indictment are "True." (Emphasis supplied).

The second and third paragraphs of the indictment alleging prior convictions for enhancement read:

And the Grand Jurors aforesaid do further present that prior to the commission of the aforesaid offense by JOSE LUIS LUJAN to-wit: on the 26TH day of JUNE, A.D., 1969, in the 175TH JUDICIAL District Court of BEXAR COUNTY, TEXAS, in Cause No. 69–699–A, on the docket of said Court, the said JOSE LUIS LUJAN, hereinafter referred to as defendant, was duly and legally convicted

in said last named Court of a felony, to-wit: BURGLARY WITH INTENT TO COMMIT THEFT, upon an indictment then legally pending in said last named Court and of which said Court had jurisdiction; and said conviction was a final conviction and was a conviction for an offense committed by the defendant, prior to the commission of the offense herein-before charged against him, as set forth in the FIRST paragraph hereof. And the Grand Jurors aforesaid do further present that prior to the commission of each of the aforesaid offenses by the defendant, to-wit: on the 4TH day of JANUARY, A.D., 1965, in the 144TH JUDICIAL District Court of BEXAR COUNTY, TEXAS, in Cause No. 64328, on the docket of said Court, the said JOSE LUIS LUJAN, the aforesaid defendant, was duly and legally convicted in said last named Court of a felony, to-wit: BURGLARY WITH INTENT TO COMMIT THEFT, upon an indictment then legally pending in said last named Court and of which said Court had jurisdiction; and said conviction was a final conviction and was a conviction for an offense committed by the defendant prior to the commission and conviction of the offense herein-before charged against him in the SECOND paragraph hereof, and said conviction set forth in this paragraph was prior to the commission of the offense set forth in the FIRST paragraph hereof; against the peace and dignity of the State.

The jury specifically found that "all the allegations in the second and third paragraphs of the indictment are 'True'."

The third paragraph of the indictment, in alleging the first previous conviction, stated that "said conviction was a final conviction . . . prior to the commission and conviction of the offense hereinbefore charged against him in the second paragraph." The jury was aware of this allegation of the indictment because the allegation was included in the third paragraph of the court's charge on punishment.

The jury, in arriving at its verdict on punishment, therefore, made its affirmative finding that the second previous felony conviction was for an offense that occurred subsequent to the first previous conviction having become final. The verdict is not uncertain or indefinite as claimed by appellant. The ground of error is overruled.

 We have examined two pro se briefs filed by appellant and find that the contentions raised therein are not supported by the record. Among the assertions raised are that he was denied the services of counsel at the scene of the arrest and was subjected to intense interrogation resulting in his making several incriminating statements. No statements of appellant were offered at the trial and the record does not reflect that the State was aware that such statements existed.

We can perceive no harm resulting to appellant, even if his assertions are true, since no evidence was presented to the jury which derived from the alleged violation. We find no reversible error and the judgment is affirmed.