**Andrew MORGAN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 39617.**

Court of Criminal Appeals of Texas.

May 4, 1966.

Rehearing Denied June 15, 1966.

Cantey, Hanger, Gooch, Cravens & Scarborough, by William L. Hughes, Jr. (on appeal only), Fort Worth, for appellant.

Doug Crouch, Dist. Atty., Truman Power, Roland H. Hill, Jr., and John H. Chambers, Asst. Dist. Attys., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is fondling as denounced by Article 535d Vernon's Ann.P.C.; the punishment, 25 years.

Prosecutrix' mother testified that she had her first and only date with appellant on the night in question and that when he came to her home to get her, he left his stereo set for the amusement of her children. She stated that during the course of the evening, she became disenchanted with appellant's company and left the night spot after calling a girl friend who came and got her. She stated that while she and her girl friend were at still another place, she got a message from her home, that when she arrived, the officers were already there, that her front door had been broken into and that her 12 year old daughter, the prosecutrix, was "white" and "shaking like she had a chill" and appeared to be "scared to death".

The prosecutrix testified as to appellant's arrival for his date with her mother, and as to his leaving the stereo which she and the other children played until they retired for the evening. She stated that sometime later she was awakened by appellant's "feeling into my privates" and "trying to get my pants off" and that he asked her if she would "take it all". She stated that when she said "no" to the last inquiry, appellant left, but within a few moments returned, made inquiry about the broken front-door glass, asked for his "record player" and then left. Upon the departure of appellant's automobile, the description of which she noted, prosecutrix dressed and immediately went across the street to Mrs. Wooten's house where she reported "that a man broke in on us" and used Mrs. Wooten's telephone to call her Uncle Ed and attempted to reach her mother. When the police arrived, prosecutrix gave them a description of appellant's automobile, and he was soon thereafter apprehended. Later in the day prosecutrix identified appellant in a police line-up.

Mrs. Wooten testified that she lived across the street from prosecutrix, that between one and two o'clock on the morning in question she heard an automobile roar away from prosecutrix' house, that within five minutes or less her door bell rang and that when she responded, she discovered prosecutrix and one of her sisters at her doorstep. She testified that prosecutrix was "real white and shakey just like she had a chill", and "on the verge of hysteria" and that she reported that she had been awakened by a man who "was trying to take off her panties", whereupon she notified the police, who arrived about the time prosecutrix' mother arrived.

Appellant, testifying in his own behalf, admitted two prior felony convictions in Oklahoma and a theft conviction in Dallas. He gave substantially the same testimony as did prosecutrix' mother as to their meeting and the date and further admitted that he had broken in the glass on the front door, removed the chain latch which held it closed and entered the bedroom where prosecutrix and the other children were asleep. He gave as his reasons for this forceful entry that he thought prosecutrix' mother had another man in the house with her and also that he thought someone was carrying his stereo out the rear door of the house. He denied that he attempted to fondle prosecutrix. He stated that he recovered his stereo on his first visit to the house and later returned to get the legs therefor, which he had forgotten.

We shall state the facts more fully in discussing the contentions advanced by counsel on appeal in his brief and in argument.

He first contends that the evidence is insufficient as a matter of law because of the

failure of the State to call any of the other children who were shown to be present in the room at the time of the commission of the offense. Reliance is had upon Skewis v. State, 94 Tex.Cr.R. 306, 257 S.W. 896, and Ramirez v. State, 163 Tex.Cr.R. 109, 289 S.W.2d 251. We quote from the opinion in Skewis:

" * * * The evidence is unsatisfactory. It appears that two other children were present when it is claimed that appellant put his privates between the legs of the little girl. Their ages were not shown, nor are they used as witnesses, nor their absence accounted for."

■ In the case at bar the ages of the other children were shown to have been nine, six, three, two and five months. While appellant is correct in his contention that this record reveals that one or perhaps two of these children were shown to have been awake at the time of the commission of the offense charged, we have concluded that the immediate outcry to Mrs. Wooten, together with the tender years of the other children, makes this evidence satisfactory rather than "unsatisfactory" as the facts in Skewis were characterized by Judge Lattimore. Ramirez v. State, can have no application because the witnesses who were not called were members of the highway patrol.

■ Appellant next contends that the court failed to comply with the terms of Article 708 (38.06) Vernon's Ann.C.C.P. in that he did not conduct a preliminary examination of prosecutrix to determine whether or not she possessed sufficient intellect to relate transactions with respect to which she was to be interrogated and also first determine whether she understood the obligation of an oath. This statute does not require a preliminary examination, and the question of prosecutrix' competency was never raised. None of the cases cited by appellant supports his contention, if we

have properly construed it, and we are aware of none.

■ Appellant next contends that the court erred in answering the question, "What is the minimum number of years defendant must serve under a 25 year sentence?" propounded by the jury during their deliberations by telling them, "I cannot answer your question and you will have to be governed by the law as given you in the charge." It is appellant's contention that the Court should have instructed the jury to discontinue this line of consideration and inquiry as was done in Pennington v. State, Tex.Cr.App., 364 S.W.2d 376. While Judge Miller's answer in Pennington is clearly the best the writer has encountered, we have concluded that the judge's answer in the case at bar, in the absence of any objection, could not call for a reversal of this conviction. In fact, we construe his answer as equivalent to telling them that it would not be proper for the court to instruct them on the subject inquired about.

■ We have examined this record with care in the light of the contention of appellant's attorneys on appeal that his court appointed trial attorney did not adequately represent him, whereby they point to many objections which should have been made and evidence which should not have been introduced. The United States Court of Appeals for the Fifth Circuit in Williams v. Beto, 354 F.2d 698, in discussing such a contention said:

"The practice of law is an art as well as a science. As no two men can be exactly alike in the practice of the profession, it is basically unreasonable to judge an attorney by what another would have done, or says he would have done, in the better light of hindsight."

Finding the evidence sufficient to sustain the conviction and no reversible error appearing, the judgment is affirmed.