Harriman v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-116-CR

     CHARLES EUGENE HARRIMAN,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 296th District Court
Collin County, Texas
Trial Court # 296-80582-94
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Harriman appeals from his conviction for aggravated assault, enhanced by a prior
conviction, for which he was sentenced to 15 years and 6 months in the Texas Department of
Criminal Justice.
      The Wendells, the Kneedlers, and Appellant are neighbors. On December 21, 1993, at about
6:00 p.m., Appellant went to the Wendells' house. He had been drinking, was incoherent,
described his gun, and began looking for beer. The Wendells were frightened. Mr. Wendell got
Appellant out of his house and went across the street to Terry Kneedler's house, followed by
Appellant. Kneedler did not allow Appellant into his house, but he joined Wendell and Appellant
outside. Appellant, vexed by Kneedler's refusing to let him in his house, became violent, swung
at Kneedler, and hit and kicked him. Appellant cursed and screamed, tore off his shirt, beat his
chest, and stated to Kneedler, "I'm going to kill you." Appellant then pulled a razor-blade
boxcutting knife and began to slash at Kneedler. Kneedler was able to block Appellant's slashes
at his head and neck. Appellant also threatened to cut Kneedler's head off and kill him. Mrs.
Kneedler, who was observing from the house, called the police who arrived almost immediately. 
They found Appellant drunk. A razor knife was taken from his pocket. The arresting officer
testified that the knife was "definitely" capable of causing serious bodily injury or death.
       The jury found Appellant guilty. After proof of a prior felony conviction, the judge
sentenced Appellant to prison for 15 years and 6 months.
      Appellant appeals on two points of error.
      Point one: "The trial court erred in holding the evidence sufficient to sustain the conviction
because the evidence was insufficient to prove beyond a reasonable doubt that Appellant used a
deadly weapon, to-wit: a knife that in the manner of its use or intended use was capable of causing
death or serious bodily injury."
      The standard of review is, viewing the evidence in the light most favorable to the verdict, any
rational trier of fact could find each element of the offense beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Geesa v. State 820 S.W.2d 154 (Tex. Crim. App. 1991).
      The evidence is sufficient. Appellant made numerous murderous threats. He hit and kicked
the victim causing serious bodily injury. He pulled a knife which several witnesses, including a
police officer, testified was capable of causing death or serious bodily injury. Also he tried again
and again to slash the victim's head, neck and facial area. Point one is overruled.
      Point two: "The punishment is void because the punishment assessed is not authorized by
statute."
      The punishment range for Appellant's offense is not less than two years or more than twenty
years with the finding of "true" to the enhancement paragraph of the indictment. The punishment
range for Appellant's offense is not less than two or more than ten years with the finding of
"untrue" to the enhancement paragraph. The judgment brought forward in the transcript showed
"true" typed for the finding on the enhancements, and further showed a small handwritten notation
"un" just prior to the typed "true." The trial judge signed the judgment. Without the enhancement
being found to be "true," the punishment is outside the lawful range. Point two is sustained.
      The judgment of guilty is affirmed. The judgment insofar as the sentence imposed is
reversed. The cause is remanded for resentencing.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed in part; reversed and remanded in part
Opinion delivered and filed January 31, 1996
Do not publish



: Did he place his hands on your private parts?
 
      A.A.:          Yes.
 
PROSECUTOR: Now, when we talk about “private parts” we’re using not the scientific name,
you understand that?
 
      A.A.:          (The witness nods.)
 
PROSECUTOR: Now, when we talk about “private parts” and you say that he put his hands on
them, are you talking about your chest area or your area down below where you
go to the bathroom?
 
      A.A.:          (The witness nods.)
 
PROSECUTOR: Which one? Where your chest is?
 
      A.A.:          (The witness holds up two fingers.)
 
PROSECUTOR: Where you go to the bathroom? You’re signaling number 2; is that right?
 
      A.A.:          (The witness nods.)

      The State called its second and final witness Marcy McCarter to provide outcry testimony. 
McCarter testified that A.A. told her on the date in question “that someone had sexually molested
her.” The State later asked McCarter whether A.A. named the person who had molested her. 
Hill objected because the question sought a hearsay response and because the State had not given
him the notice required by article 38.072, section 2(b)(1) of the Code of Criminal Procedure for
outcry testimony. See Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1) (Vernon Supp. 1999). 
 The State withdrew McCarter and rested before the court could rule on Hill’s objection. Hill did
not ask the court to strike McCarter’s prior testimony.
      In argument, Hill challenged the sufficiency of the evidence to prove venue in Navarro
County or to prove the offense alleged because “a little child” “testified” only “that Rocky put his
hand between her legs.” He argued that A.A.’s testimony raised a question “that there was
possibly some coaching going on.”
      The State responded that A.A. and McCarter “prior to her being excused” both testified that
the offense occurred in Navarro County. The prosecutor concluded, “The only believable
evidence that we have in this case is that little girl that sat up there crying and embarrassed
because she was forced to come in here and have to testify to that. And she told you the truth.”
      Before finding Hill guilty, the court stated:
With respect to the child witness herself, I realize the child was somewhat nonverbal,
but the Court was in a position to appreciate her responses, both her verbal responses and
her body language and head nods with respect to some of the questions that were asked.
 
With regard to her mother, who remained in the courtroom, the Court is not
convinced that there was any sort of coaching. I had an opportunity to see any possible
interplay between the mother and the child . . . .
 
Based on the evidence, I find the Defendant guilty of the offense alleged in the
indictment in this case.

THE REPORTER’S RECORD
      Hill contends in his third issue that the court reporter’s inclusion of A.A.’s nonverbal
responses during her testimony exceeds the parameters of appellate rule 34.6(a) which governs the
content of the reporter’s record. See Tex. R. App. P. 34.6(a). He requests this Court to submit
the record to the trial court “for corrections to ensure that the reporter’s record is made to conform
to what occurred in the trial court as to actual testimony given with the deletion of the nonverbal
nods and hand signals referenced above.” Id. 34.6(e)(3).
      Rule 34.6(a)(1) provides in pertinent part that a stenographically-recorded reporter’s record
“consists of the court reporter’s transcription of so much of the proceedings, and any of the
exhibits, that the parties to the appeal designate.” Tex. R. App. P. 34.6(a)(1) (emphasis added). 
Rule 13.1(a) requires a court reporter to “make a full record of the proceedings.” Id. 13.1(a)
(emphasis added). Rule 34.6(e)(3) permits this Court to submit a reporter’s record to the trial
court for correction when the parties dispute the accuracy of the record. Id. 34.6(e)(3).
      The appellate rules do not define what is included within the term “proceedings.” Hill
believes that rule 34.6 is “designed to capture testimony,” presumably to the exclusion of any
other matters which might transpire during a trial. He contends that A.A.’s nonverbal responses
constitute “inaccuracies which should be removed for purposes of this Appeal.”
      When construing a procedural rule adopted by the Court of Criminal Appeals, we employ the
ordinary tools of statutory construction. See State v. Hardy, 963 S.W.2d 516, 519 (Tex. Crim.
App. 1997). We apply the plain meaning of the words contained in the rule unless such would
lead to absurd results. Id.
      Webster’s Collegiate Dictionary defines “proceedings” to mean “events, happenings.” 
Merriam-Webster’s Collegiate Dictionary 929 (10th ed. 1993). Thus, we construe the term
“proceedings” to mean those “events” or “happenings” which occur during the course of a trial
or other hearing. The term is not limited solely to the recording of verbalized “testimony” as
suggested by Hill.
      This definition is confirmed by experience. Court reporters frequently report nonverbal and
nontestimonial events in the record. For example, court reporters routinely note when the jury
is present in the courtroom and when proceedings are being conducted outside the presence of the
jury or at the bench outside the jury’s hearing. Similarly, reporters record the trial court’s rulings,
which are not evidence and do not constitute “testimony.”
      This definition finds further support in the Uniform Format Manual for Texas Court Reporters
recently adopted by the Court of Criminal Appeals.


 See Order Adopting the Uniform Format
Manual for the [sic] Texas Court Reporters and Amending Court of Criminal Appeals Order
Directing the Form of the Appellate Record in Criminal Cases, 62 Tex. B.J. 583-84 (Tex. Crim.
App. Apr. 12, 1999).


 Section 1.1(p) of the Uniform Manual defines “proceedings” to be “events
or happenings in the courts, legislature, state agencies, depositions, grand juries, referees and
court commissions.” Uniform Format Manual for Texas Court Reporters § 1.1(p), 62 Tex. B.J.
584 (1999) (hereinafter, “Uniform Format Manual”).
      The Uniform Manual also contains provisions for reporting the nonverbal conduct of a
witness. Section 16.11 provides in pertinent part:
It is the responsibility of the attorneys, as well as the judge in some instances, to note for
the record any significant nonverbal behavior (e.g., physical gestures and lengthy pauses
on the part of a witness). If counsel or the court fail to refer to the witness’s affirmative
or negative gesture or other things occurring during the proceedings that may assist the
reader, parenthetical notations may be used.

Id. § 16.11, 62 Tex. B.J. 591. Subsection (a) of section 16.11 provides several “recommended
parenthetical notations” including: “(Moving head up and down)” and “(Moving head side to
side).” Id. § 16.11(a). Section 16.15 provides:
16.15Verbal and Nonverbal Expressions. Expressions such as “Uh-huh” and “Huh-uh” should be transcribed accordingly. “Uh-huh is used when the speaker is
answering affirmatively. “Huh-uh” is used when the speaker is answering
negatively. In the instance where there is no verbal response to a query (i.e.,
person nodding or shaking head) the reporter/transcriber may indicate in the
transcription that the person is indicating either affirmatively or negatively.

Id. § 16.15, 62 Tex. B.J. 592.
      Our research has disclosed at least four cases in which the appellate court relied on a child-witness’s “nods” when deciding the case. See Rodriguez v. State, 802 S.W.2d 716 (Tex.
App.—San Antonio 1990), reformed in part, 819 S.W.2d 871 (Tex. Crim. App. 1991); Macias
v. State, 776 S.W.2d 255 (Tex. App.—San Antonio 1989, pet. ref’d); Gonzales v. State, 748
S.W.2d 510 (Tex. App.—Houston [1st Dist.] 1988, pet. ref’d); Rhea v. State, 705 S.W.2d 165
(Tex. App.—Texarkana 1985, pet. ref’d).
      In Rodriguez, the court characterized the six-year-old’s testimony thus:
The “testimony” of the complainant . . . shows she nodded her head affirmatively
when asked, “Has anyone ever touched you in a bad way?” But when asked, “Who has
touched you in a bad way?”, she answered, “I don’t know.” Next was the inquiry,
“When that someone touched you in a bad way, where did they touch you?” But the
child refused to answer. When asked, “Can you tell me that person’s name?”, the child
shook her head negatively.

Rodriguez, 802 S.W.2d at 724. The court found the evidence insufficient because the child-victim
did not name, identify, or in any way acknowledge the defendant as the person who sexually
assaulted her and because the outcry witness’s testimony that the victim said the defendant had
touched her with his “pee-pee” was inadmissible because of noncompliance with article 38.072
and because it did not qualify as an “excited utterance.” Rodriguez, 802 S.W.2d at 722-24. 
Because the court found the evidence legally insufficient, it ordered an acquittal. Id. at 724.



      The courts in Macias, Gonzales, and Rhea each reviewed a child-witness’s testimony,
including nonverbal “nods” noted in the record, to determine whether the trial court abused its
discretion in finding the witness competent to testify. See Macias, 776 S.W.2d at 256-58;
Gonzales, 748 S.W.2d at 511-12; Rhea, 705 S.W.2d at 167-70; Tex. R. Evid. 601(a)(2).
      Because we conclude that A.A.’s nonverbal responses constitute a part of the “proceedings”
in the court below, the court reporter properly included them in the record. See Tex. R. App. P.
13.1(a), 34.6(a)(1). Hill does not challenge the accuracy of the parenthetical references
concerning A.A.’s nonverbal actions. Thus, submission of the record to the trial court for
“correction” is unnecessary. Id. 34.6(e)(3). Accordingly, we overrule Hill’s third issue.
COMPETENCY
      Hill asserts in his fourth issue that the court erred by failing to sua sponte examine A.A. to
determine whether she was competent to testify because her nonverbal responses to some of the
State’s questions and her “I don’t know” responses to some of Hill’s questions “should have raised
in the court’s mind a question from the court as to the child witness being incompetent to testify.” 
See Tex. R. Evid. 601(a)(2). However, rule 601(a)(2) does not require the trial court to conduct
a competence evaluation sua sponte. See Grayson v. State, 786 S.W.2d 504, 505 (Tex.
App.—Dallas 1990, no pet.); accord Morgan v. State, 403 S.W.2d 150, 152 (Tex. Crim. App.
1966). Moreover, Hill never asked the court to evaluate A.A.’s competence to testify, nor did he
object to her competence. Thus, he has failed to preserve this issue for our review. See
Boudreaux v. State, 878 S.W.2d 701, 705 n.1 (Tex. App.—Beaumont 1994, no pet.); Grayson,
786 S.W.2d at 505; Tex. R. App. P. 33.1(a)(1). Accordingly, we overrule Hill’s fourth issue.
SUFFICIENCY OF EVIDENCE
      Hill challenges the legal and factual sufficiency of the evidence in his first and second issues
respectively to prove he “engaged in sexual contact with [A.A.] by touching [her] genitals.”
      In reviewing a claim of legal insufficiency, we view the evidence in a light most favorable to
the verdict and determine whether any rational trier of fact could have found the essential element
beyond a reasonable doubt. Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (citing
Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979)). 
We resolve any inconsistencies in the evidence in favor of the verdict. Matson v. State, 819
S.W.2d 839, 843 (Tex. Crim. App. 1991).
      When presented with a factual insufficiency claim, we discard the prism of the light most
favorable to the verdict. Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We
reverse "only if [the verdict] is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust." Id. 
      We consider all the evidence in the record related to the contested issue, "not just the evidence
which supports the verdict." Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). 
We review the evidence tending to prove the issue, "and compare[] it to the evidence which tends
to disprove that [issue]." Id. We give appropriate deference to the trier of fact's decision and do
not substitute our judgment for its. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 
We do not set aside the "verdict merely because [we] feel that a different result is more
reasonable." Clewis, 922 S.W.2d at 135 (quoting Pool v. Ford Motor Co., 715 S.W.2d 629, 634
(Tex. 1986)); accord Cain, 958 S.W.2d at 407.
      Viewing the evidence in a light most favorable to the verdict, A.A. testified that Hill touched
her in the place “where [she] go[es] to the bathroom.” McCarter testified that A.A. told her
“someone had sexually molested her.” From this evidence, we conclude that a rational trier of
fact could have found beyond a reasonable doubt that Hill “engaged in sexual contact with [A.A.]
by touching [her] genitals.” See Saxton, 804 S.W.2d at 914. Accordingly, we overrule Hill’s
first issue.
      The evidence recited above tends to support the court’s verdict. The medical evidence is
inconclusive on the question of whether the offense occurred. Hill argues that A.A.’s nonverbal
responses are ambiguous and could be equally interpreted to be negative responses to the questions
asked because the reporter’s record does not indicate whether she nodded “affirmatively” or
“negatively.” See, e.g., Macias, 776 S.W.2d at 257; Uniform Format Manual, §§ 16.11, 16.15.
      We agree that appellate review of a witness’s nonverbal responses can be more readily
accomplished if the court reporter indicates whether the witness is making an affirmative or
negative response. Id. It appears in this case however that the court reporter did so by using the
phrase “The witness nods” to indicate an affirmative response and the phrase “The witness shakes
her head” to indicate a negative response.
      In addition, the court stated on the record that it “was in a position to appreciate [A.A.’s]
responses, both her verbal responses and her body language and head nods with respect to some
of the questions that were asked.” Based on this statement and the verdict, it appears that the
court construed A.A.’s nods to the critical questions to be affirmative responses to those questions. 
      The trier of fact “is the exclusive judge of the facts proved, and of the weight to be given to
the testimony.” Cain, 958 S.W.2d at 407 n.5 (quoting Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979)). When conducting a factual sufficiency review, we must defer to the trier of fact
on issues relating to the credibility and weight of the testimony unless the verdict is “manifestly
unjust.” Santellan, 939 S.W.2d at 164-65. The interpretation to be assigned A.A.’s nonverbal
responses is such an issue.
      Giving appropriate deference to the trier of fact’s evaluation of A.A.’s testimony and the facts
proved by her testimony, we conclude the verdict is not “manifestly unjust.” Accordingly, we
overrule Hill’s second issue.
      We affirm the judgment.
                                                                               REX D. DAVIS
                                                                               Chief Justice
Before Chief Justice Davis
      Justice Vance and
      Justice Gray
Affirmed
Opinion delivered and filed October 13, 1999
Publish